MORGAN, LEWIS & BOCKIUS LLP
Sarah Zenewicz, Bar No. 258068
sarah.zenewicz@morganlewis.com
600 Montgomery Street, Suite 2300
San Francisco, CA 94111
Tel: +1. 415.442.1000
Fax: +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ulises Solis, Bar No. 365681
ulises.solis@morganlewis.com
1400 Page Mill Road
Palo Alto, CA 94304
Tel: +1.650.843.4000
Fax: +1.650.843.4001

Attorneys for Defendant
YOH SERVICES LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ACACIA JOI LARES, individually, and on behalf of all others similarly situated,

Plaintiff,

vs.

YOH SERVICES LLC, a Delaware corporation; SONY INTERACTIVE ENTERTAINMENT LLC, a Delaware limited liability company; NAUGHTY DOG LLC, a California limited liability company, and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:26-cv-08570

**DEFENDANT YOH SERVICES LLC'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

[Los Angeles Superior Court Case No. 26STCV17036]

[28 U.S.C. §§ 1332, 1441, 1446 and 1453]

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF, DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant Yoh Services LLC ("Yoh" or "Defendant") hereby removes the above-entitled action from the Los Angeles Superior Court to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million. This removal is based on the following grounds:

## I. PROCEDURAL BACKGROUND

1. On May 29, 2026, Plaintiff Acacia Joi Lares ("Plaintiff") filed a putative class action complaint in the Los Angeles Superior Court, entitled *Acacia Joi Lares, individually, and on behalf of all others similarly situated vs. Yoh Services LLC; and Does 1 through 10, inclusive* (the "Complaint"). A true and correct copy of Plaintiff's Complaint is attached hereto as **Exhibit A**.

2. On June 25, 2026, Plaintiff filed a First Amended Class Action Complaint ("FAC") adding Defendants Sony Interactive Entertainment LLC ("Sony") and Naughty Dog LLC ("Naughty Dog").

3. On July 2, 2026, Plaintiff served copies of the Summons and FAC on the registered agent for Yoh. True and correct copies of Plaintiff's Summons and FAC are attached hereto as **Exhibit B**.

4. Plaintiff seeks to represent the following class of persons employed by Yoh: "[a]ll persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." (the "Class"). FAC ¶ 24.

5. On behalf of herself and the Class, Plaintiff alleges eight causes of action in her FAC. They are: (1) failure to pay minimum wage and straight time

wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay wages due at termination; (6) failure to provide accurate itemized wage statements; (7) failure to indemnify employees for expenditures; and (8) Unfair Business Practices under California Business and Professions Code section 17200, *et seq*.

6. The documents attached hereto as **Exhibit C** constitute all the process, pleadings, and orders filed in this action in the Superior Court of the State of California for the County of Los Angeles.

7. **Exhibits A, B,** and **C** constitute all the pleadings, process, and orders served upon or filed by Yoh in the Superior Court action.

## II. REMOVAL IS TIMELY

8. Under 28 U.S.C. § 1446(b), there are "two thirty-day windows during which a case may be removed—during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'" *Harris v. Bankers Life & Cas. Co.,* 425 F.3d 689, 692 (9th Cir. 2005).

9. When a complaint is "indeterminate," a defendant is under no duty to investigate the facts showing the basis for removal, and the first 28 U.S.C. §1446(b) thirty-day window does not begin to run. *Harris,* 425. F.3d at 692-695. "[T]he ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin." *Id.* at 695.

10. Although the is indeterminate on its face because it does not affirmatively allege any amount in controversy, it cannot be disputed that this Notice of Removal is timely filed because it is filed within 30 days of service on Yoh.

## III. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

11. Plaintiff brings this action on behalf of a putative Class. FAC ¶ 2. Removal based upon Class Action Fairness Act ("CAFA") diversity jurisdiction is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because: (i) diversity of citizenship exists between the named Plaintiff (and putative Class members) and Yoh; (ii) the aggregate number of putative Class members in all proposed classes is 100 or greater; and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) & (d)(5)(B), 1453.[1] Although Yoh denies Plaintiff's factual allegations and denies that Plaintiff or the Class she purports to represent are entitled to the relief requested (or any relief whatsoever), based on Plaintiff's allegations in the FAC and prayer for relief, all requirements for jurisdiction under CAFA have been met in this case.

### A. Minimal Diversity Of Citizenship Exists.

12. To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.,* 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

#### 1. Plaintiff Is A Citizen Of California.

13. "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.,* 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing

[1] Under CAFA, any defendant may remove a qualifying class action without the consent of the other defendants. 28 U.S.C. § 1453(b). Accordingly, the consent of Defendants Sony and Naughty Dog is not required.

*Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l,* 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir. 1986)).

14. Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC,* 652 F.3d 340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise") (citing, *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986)).

15. Domicile is established by residence and an intent to remain or return. *Kanter*, 265 F.3d at 857. The intention to remain may be established by factors such as: "current residence; voting registration and practices; location of personal and real property; location of brokerage and bank accounts; location of spouse and family; membership in unions and other organizations; place of employment or business; driver's license and automobile registration; and payment of taxes." *Lew*, 797 F.2d at 750. Domicile is "evaluated in terms of 'objective facts,'" as opposed to subjective statements, so "statements of intent are entitled to little weight when in conflict with facts." *Lew*, 797 F.2d at 750. "[T]he actual fact of residence and a real intention of remaining there, as disclosed by [a party's] entire course of conduct, are the controlling factors in ascertaining his domicile." *Huynh v. Williams*, No. 2:25-CV-07351-JC, 2025 WL 2842033, at *6 (C.D. Cal. Oct. 2, 2025).

16. In the FAC, Plaintiff alleges that she "is a resident of California who worked for Defendants in Santa Monica, California." FAC ¶ 7. Plaintiff is a former employee of Yoh in California, her employment records show that at all times during her employment, she has represented to Yoh that her home address is in

California, and she has a California Driver's License, which she submitted as part of her onboarding process.[2] Taken together, these facts establish Plaintiff's domicile is in the State of California. *See Yagman v. Gabbert*, 684 F. App'x 625, 628 (9th Cir. 2017) (holding that based on plaintiff's bank account, driver's license, occupation, family, and physical residence for eight continuous years in California that she was a California citizen). Further, Plaintiff does not allege any alternative states of citizenship and does not state any facts that would support Plaintiff being a citizen of Delaware or Georgia. *See generally* FAC

**2. Yoh Is A Citizen Of Delaware And Pennsylvania.**

17. Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Defendant is now, and ever since this action commenced has been, a limited liability company organized in the State of Delaware with its principal place of business in Pennsylvania.

18. The "principal place of business" of an unincorporated association, as used in 28 U.S.C. § 1332(d)(10), is the association's "nerve center," or "the place where an [association's] officers direct, control, and coordinate the [association's] activities." *See Hertz v. Friend*, 130 S. Ct. 1181, 1192 (2010). "[I]n practice," the Supreme Court explained, "it should normally be the place where the [association] maintains its headquarters provided that the headquarters is the actual center of direction, control, and coordination. . . ." *Id.* A limited liability corporation's principal place of business is often the office which the public considers to be its main place of business. *Id.* at 1193. The Supreme Court emphasized in *Hertz* that

[2] Yoh respectfully contends that the factual allegations set forth in this Notice of Removal amply support the conclusion that Plaintiff is domiciled in, and therefore a citizen of, California. However, if the Court finds any material question regarding citizenship, Yoh requests that the Court order jurisdictional discovery. *See Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) ("[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.").

the "nerve center test" should be one of "administrative simplicity." *Id.*

19. Defendant's principal place of business is located at 1835 Market Street, Philadelphia, Pennsylvania 19103. Defendant's high-level executive management team is based in Pennsylvania and directs its business from the Pennsylvania headquarters. *Id.* The majority of Defendant's executive and administrative functions take place in Pennsylvania or in New Jersey. *Id.* The greater part of Defendant's domestic administrative functions (including payroll, accounting, purchasing, marketing, and information systems) are, and have been, performed in Pennsylvania or in New Jersey. *Id.* Defendant holds itself out to the public as having its corporate headquarters in Pennsylvania. *Id.*

20. As a result, Yoh is not now and was not at the time of the filing of the FAC in this action, a citizen of California. *Id.* Yoh is now and, at the time this action commenced, a citizen of Delaware and Pennsylvania. *Id.*

**3. Doe Defendants' Citizenship Must Be Disregarded.**

21. For purposes of determining diversity for removal, "Doe" defendants are immaterial. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *see also Soliman v. Philip Morris*, Inc., 311 F.3d 966, 971 (9th Cir. 2002) ("The citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant."); *Newcombe v. Adolf Coors Co*., 157 F.3d 686, 690-91 (9th Cir. 1998) (holding that for removal purposes, the citizenship of defendants sued under fictitious names are disregarded).

22. Accordingly, because Plaintiff is a citizen of California and Yoh is a citizen of Delaware and Pennsylvania, diversity jurisdiction exists under CAFA. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity"). Because minimal diversity is satisfied, the citizenship of Defendants Sony and Naughty Dog is

irrelevant to determining whether the Court has subject matter jurisdiction under CAFA.

**B. <u>The Putative Class Has More Than 100 Members.</u>**

23. Based on Plaintiff's Class definition, the putative Class includes more than 100 members. Specifically, the putative Class is defined to include all current and former employees of Yoh working in the State of California as hourly or non-exempt since May 29, 2022. FAC ¶ 24. There are more than 6,700 such individuals.

**C. <u>The Amount In Controversy Exceeds Five Million Dollars.</u>**

24. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109-14, at 42 (2005) (citations omitted).

25. A removing party that invokes CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Because plausible allegations suffice, a removing party need not submit evidence in support of its removal. *Roa v. TS Staffing Servs, Inc.,* 2015 WL 300413, at *2 (C.D. Cal. Jan. 22, 2015).

26. A removing defendant is "not required to comb through its records to identify and calculate the exact frequency of violations." *Oda v. Gucci Am., Inc.,* 2015 WL 93335, at *5 (C.D. Cal. Jan 7, 2015); *see Sanchez v. Russell Sigler, Inc.,* 2015 WL 12765359, at *2 (C.D. Cal. April 28, 2015) ("[A] removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." (citation omitted); *see also LaCross v. KnightTransp. Inc.,* 775 F.3d 1200, 1203

(9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy"). The inquiry is what amount the plaintiff's complaint places in controversy, not what amount, if any, a defendant may actually owe. *LaCross,* 775 F.3d at 1202 (internal citation omitted) (explaining that courts are directed "to first look to the complaint in determining the amount in controversy.").

27. Although Yoh expressly denies Plaintiff's factual allegations and denies that she or the putative class that she seeks to represent are entitled to any relief, Plaintiff's FAC satisfies the jurisdictional threshold of $5 million.[3]

**1. Plaintiff's Cause of Action For Failure To Provide Meal Periods Places At Least $5,250,000.00 In Controversy.**

28. Plaintiff seeks to recover meal period premiums for the putative Class based on her allegations that Defendant "maintained a systematic, company-wide policy and practice of … [f]ailing to provide employees with timely and duty-free meal periods." FAC ¶ 4. Plaintiff further alleges that Defendant "requir[ed], pressure[ed], or encourag[ed] them to perform work tasks which could not be completed without working in lieu of taking mandatory meal periods, or [] den[ied]

[3] This Notice of Removal discusses the nature and amounts of damages placed in controversy by the allegations in Plaintiff's Complaint. Yoh's reference to specific damage amounts are provided solely for the purposes of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Yoh maintains that each of Plaintiff's claims is without merit and that Yoh is not liable to Plaintiff. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages whatsoever based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Yoh's] liability." *Lewis v. Verizon Communs., Inc.,* 627 F.3d 395, 400 (9th Cir. 2010).

… permission to take a meal period," which "made it impossible or impracticable to take these uninterrupted meal periods." *Id.* at ¶ 16, 52. Plaintiff further alleges that Defendant "fail[ed] to pay an additional hour's pay for each workday a meal period violation occurred." *Id.* at ¶ 4.

29. Labor Code section 512(a) states that an employer must provide non-exempt employees an uninterrupted meal period of not less than 30 minutes for a work period of more than five hours. Labor Code section 226.7(b) states that if an employer fails to provide an employee a meal period in accordance with state law, the employer shall pay the employee one additional hour at the regular rate of pay for each workday that the meal period is not provided.

30. Plaintiff also alleges that the failure to provide meal periods constitutes unfair competition within the meaning of the UCL (FAC ¶ 85) and thus the applicable statute of limitations for the meal period claim is four years. Bus. & Prof. Code § 17208.

31. Based on Yoh's records the putative class has worked at least 250,000 workweeks during the relevant period with an average pay rate of at least $42.00 during this period.

32. Yoh's calculation of the amount in controversy for Plaintiff's meal period cause of action is **$5,250,000.00** (which conservatively assumes one non-compliant meal period in just half the workweeks) (*i.e.*, 125,000 workweeks during the relevant period x $42.00 meal period premium). Courts have found that an assumption of one violation per workweek—twice the amount used here—is generally accepted as a reasonable and conservative assumption when calculating the amount in controversy for CAFA purposes. *See Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (finding that a 20% violation rate for meal and rest period was reasonable); *Danielsson v. Blood Centers of Pac.*, 2019 WL 7290476, at *6 (same).

**2. Plaintiff's Cause Of Action For Failure To Provide Rest Periods Places At Least $5,250,000.00 In Controversy.**

33. Plaintiff seeks to recover rest period premiums for the putative Class based on her allegations that Defendant "maintained a systematic, company-wide policy and practice of . . . [f]ailing to authorize and permit employees to take timely and duty-free rest periods." FAC ¶ 4. Plaintiff further alleges that Defendant "requir[ed], pressure[ed], or encourag[ed] them to perform work tasks which could not be completed without working in lieu of taking mandatory rest periods, or [] den[ied] … permission to take a rest period," which "made it impossible or impracticable to take these uninterrupted rest periods." *Id*. at ¶ 17, 56. Plaintiff further alleges that Defendant "fail[ed] to pay an additional hour's pay for each workday a rest period violation occurred." *Id.* at ¶ 4.

34. Labor Code section 226.7(b) states that if an employer fails to provide an employee a rest period in accordance with state law, the employer shall pay the employee one additional hour at the regular rate of pay for each workday that the rest period is not provided.

35. Plaintiff also alleges that the failure to provide rest periods constitutes unfair competition within the meaning of the UCL (FAC ¶ 86) and thus the applicable statute of limitations for the rest period claim is four years. Bus. & Prof. Code § 17208.

36. Yoh's calculation of the amount in controversy for Plaintiff's rest period cause of action is **$5,250,00.00** (125,000 workweeks x $42.00 rest period premium). The computation is based on the conservative assumption of a violation rate of one non-compliant rest period for half the workweeks in the relevant period. An assumption of one violation per workweek—double the assumption used here—is generally accepted as a reasonable and conservative assumption when calculation the amount in controversy for CAFA purposes. *See Chavez*, 2019 WL 1501576, at *3; *Danielsson*, 2019 WL 7290476, at *6.

**3. Plaintiff's Cause Of Action For Failure To Timely Pay Wages Owed At Separation Places At Least $16,128,000.00 In Controversy.**

37. Plaintiff alleges that "Defendants willfully failed and refused to timely pay Plaintiff, and some of, but not necessarily all of, the Class all final wages due at their termination of employment" and that it was "Defendants' policy and practice." FAC ¶ 18.

38. Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca,* 68 Cal. App. 4th 487, 492-93 (1998). As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, the wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day she or she remained unpaid up to a total of 30 days." *Id.* at 493.

39. The statute of limitations for waiting-time penalties claims is three years. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1395, 1398 (2010).

40. Based on Yoh's records, there are at least 3,200 former full-time hourly or non-exempt employees since May 29, 2023.

41. Yoh's calculation of the amount in controversy for Plaintiff's waiting time penalty claim is **$16,128,000.00** (1,600 terminated class members x $42.00 average hourly rate x 8 hours per day x 30 days). The computation of the amount in controversy is based on the allegation that each one of the terminated employees was owed but not paid at least some of their wages at termination and accrued 30 days of waiting time penalties based on those unpaid wages. Despite Plaintiff's broad allegations that each terminated employee is entitled to waiting time penalties, this conservatively assumes only half of the at least 3,200 terminated former hourly or non-exempt employees (1,600) is owed a waiting time penalty

based on the average wage rate. It is reasonable to calculate the amount in controversy for waiting time penalties based on a 30-day penalty because nothing in the FAC supports any inference that the allegedly unpaid wages have ever been paid. *See Ford v. CEC Entm't, Inc.*, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid."); *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding defendants' waiting time penalties calculation was "supported by Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "'regularly required'" putative class members to work off-the-clock without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to assume, in light of the allegations in the complaint that members of the putative class "'routinely'" missed meal periods, that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty").

**4. Plaintiff's Request For Attorneys' Fees Places At Least An Additional $1,000,000.00 In Controversy.**

42. Plaintiff seeks to recover statutory attorneys' fees. FAC ¶¶ 40, 48, 64, 72, 77, 94, Prayer for Relief. Future attorneys' fees are properly included in determining the amount in controversy. *See Fritsch v. Swift Transp. Co. of Arizona, LLC,* 899 F.3d 785, 793-794 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."). The Ninth Circuit held that future fee estimates can be based on

"customary rates and proper fees," and that "a percentage-based method," such as 25% of the amount in controversy, may also be relevant when estimating the amount of fees included in the amount in controversy. *Id.* at 795, 796, fn. 6. Using 25% of the amount in controversy as a benchmark for attorneys' fees for the meal, rest and waiting time penalty claims alone equates to $2,012,225.00 in fees (25% of $8,048,900.00).

43. Even if the 25% benchmark is not used, it is reasonable to assume that Plaintiff's potential future attorneys' fees place at least an additional **$1,000,000** in controversy. Plaintiff's firm has recently represented to courts that their hourly rates range from $500.00 for Fourth Year Associates to $1,500.00 for Senior Partners. *See, e.g.*, *Patricia Navarrete v. Arroyo Vista Family Health Foundation*, Case No. 25STCV07589 (Los Angeles Superior Court), Declaration of John G. Yslas in support of Plaintiff's Motion for Final Approval of Class Action and PAGA Settlement (July 15, 2026); *Jose Arellano v. The J.M. SMUCKER COMPANY, et al.*, Case No. 2:23-cv-01540-WBS-DMC (United States District Court, Eastern District of California), Declaration of Tyler Woods in support of Plaintiff's Motion for Final Approval of Class Action Settlement (Dec. 8, 2025); *Victor Garza v. Renkow Mechanical, Inc.*, Case No. 3:22-cv-01404 (United States District Court, Southern District of California), Declaration of Justin F. Marquez in support of Plaintiff's Motion for Final Approval of Class and PAGA Action Settlement (Apr. 19, 2024). Based on a reasonable estimate of their hourly rates of $600 per hour rate, it would only take 1,667 billable hours to reach at least $1,000,000 in attorneys' fees in this action. Litigating a wage and hour class action through discovery, class certification, dispositive motions, and trial would easily exceed 1,681 hours. *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2017) (granting a total of $15,200,002.90 in attorneys' fees based on a total of 10,595.8 hours at rates ranging from $300 to $900 per hours following a 16-day class action trial); *Ibarra v. Wells Fargo Bank, N.A.*, 2018 WL 5276295, at *7

(C.D. Cal. Sept. 28, 2018) (awarded $1,967,253.76 in attorneys' fees to the plaintiffs following summary judgment in their favor where class counsel had spent 1,805.55 hours litigating at rates ranging from $325 to $775); *In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 847 (E.D. Cal. 2016) (awarding $1,156,821.12 in fees following trial based on 4,016.74 hours billed and a blended rate of only $288 per hour).

**5. Summary Of The Amount Placed in Controversy**

44. As described above, a reasonable estimate of the amount placed in controversy by Plaintiff's causes of action for meal period violations, rest period violations, and waiting time penalties exceed $5,000,000 – as summarized in the below chart for reference:

| Cause of Action | Amount in Controversy |
|---|---|
| Failure to Provide Meal Periods | $5,250,000.00 |
| Failure to Provide Rest Periods | $5,250,000.00 |
| Failure to Timely Pay Wages at Separation | $16,128,000.00 |
| Attorneys' Fees | $1,000,000.00 |
| **Total** | **$27,628,000.00** |

45. As a result, the amount placed in controversy by Plaintiff's causes of action exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

**6. Plaintiff's Other Causes Of Action Put Additional Amounts In Controversy, Further Exceeding the CAFA Threshold.**

46. As shown above, using reasonable assumptions grounded in the FAC's allegations, Plaintiff's claims place well over $5 million in controversy, even without including the amounts placed in controversy by Plaintiff's causes of action for failure to pay wages, failure to pay overtime, failure to furnish accurate wage statements, failure to timely pay wages, and failure to indemnify for expenditures

thus further exceeding the CAFA jurisdictional threshold.

## IV. THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

47. As set forth above, this Notice of Removal is filed within thirty days of service of the Summons and FAC upon Yoh.

48. Yoh will promptly serve Plaintiff with this Notice of Removal and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

49. Venue is proper in this district, pursuant to 28 U.S.C. § 1441(a), because it embraces the county in which the removed action was pending.

50. **Exhibits A, B,** and **C** constitute all the process, pleadings, and orders in this case.

51. The prerequisites for removal under 28 U.S.C. §§ 1441 and 1453 have been met.

52. Because this Court has original jurisdiction under the provisions of 28 U.S.C. §1332(d), removal of this action is proper pursuant to 28 U.S.C. § 1441.

53. As required by Federal Rule of Civil Procedure 7.1, Yoh concurrently filed its Corporate Disclosure Statement.

54. If any question arises as to the propriety of the removal of this action, Yoh requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

55. **WHEREFORE,** Defendant Yoh Services LLC, desiring to remove this case to the United States District Court for the Central District of California, pray that the filing of this Notice of Removal shall effect the removal of the suit to this Court.

Dated: August 3, 2026

MORGAN, LEWIS & BOCKIUS LLP

By: *_/s/ Sarah Zenewicz_*
Sarah Zenewicz
Ulises Solis

Attorneys for Defendant
YOH SERVICES LLC