**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 26-8570 PA (AYPx) | Date | September 23, 2026 |
| Title | Acacia Joi Lares v. Yoh Services LLC, et al. | | |

| | | |
|---|---|---|
| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: | |
| None | None | |

**Proceedings:** IN CHAMBERS – COURT ORDER

Before the Court is a Motion to Compel Arbitration, Dismiss or Strike Class Allegations, and Stay Action ("Motion") filed by defendant Yoh Services LLC ("Yoh") (Docket No. 10). Defendants Naughty Dog LLC ("Naughty Dog") and Sony Interactive Entertainment LLC ("Sony") filed a joinder in the Motion.[1/] (Docket No. 11.) The Motion is fully briefed. (Docket Nos. 14, 19, 20.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for September 28, 2026 at 1:30 p.m. is vacated and the matter taken off calendar.

## I. Background

Plaintiff Acacia Joi Lares ("Plaintiff") commenced this action in Los Angeles Superior Court on May 29, 2026. Plaintiff's Complaint alleges wage and hour claims under the California Labor Code on behalf of Plaintiff and a putative class of Defendants' non-exempt employees in California. Defendant Yoh, alleging that the Court possesses subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), removed the action to this Court on August 3, 2026.

Defendants' Motion seeks to enforce an arbitration agreement Plaintiff signed when she began her employment with Yoh, a subsidiary of Day & Zimmerman. In support of their Motion to Compel Arbitration, Defendants offer a declaration by Amy Rosario, VP, HR Operations of Day & Zimmerman, who is familiar with Defendants' hiring process and with the contents of Plaintiff's electronic personnel file. (See Docket No. 10-1, Declaration of Amy Rosario ("Rosario Decl.") ¶¶ 1–3.) Rosario confirms that Lares worked for Yoh as a non-exempt employee from December 9, 2024, to May 8, 2026 at Sony in Santa Monica, California. (Id.

[1/] Defendants Yoh, Naughty Dog and Sony are referred to collectively as "Defendants."

¶ 22.) Rosario is familiar with Day & Zimmerman's onboarding system, ConneX, and verified that the process through which Plaintiff was onboarded was conducted through a secure, protected portal associated with Plaintiff's unique employee profile and personal email address. (Id. ¶¶ 4–9.) After logging into ConneX, an employee is presented with documents to acknowledge and sign, including the Employment Arbitration Agreement ("Agreement"). An employee cannot complete their onboarding without actively opening, viewing, and executing the Agreement. (Id. ¶ 15.) However, if the user is not ready to sign the agreement, they can close it and return to it later. (Id. ¶¶ 10–12.) To execute the Agreement, an employee must open the document, and click a button marked "I Accept with Electronic Signature." Once that button is clicked, the Agreement's signature field populates with the details, including the employee's username and timestamp. There is also an audit log that tracks the time and signature, and that log becomes part of the employee's electronic personnel file. (Id. ¶¶ 14–16.) Based upon her review of Plaintiff's electronic personnel file, Rosario states that Plaintiff created an account with the ConneX system using her personal email address, Joi.Lares@gmail.com, and that she electronically signed the Agreement on December 3, 2024. (Id. ¶¶ 19–21.)[2/]

The Agreement also includes a class action waiver and a provision that delegates authority to resolve any dispute regarding enforcement or applicability of the arbitration agreement to the arbitrator. The relevant provisions of the Agreement state:

**DAY & ZIMMERMAN EMPLOYMENT ARBITRATION AGREEMENT**

> **1. How This Agreement Applies.** [T]his Agreement applies to any dispute arising out of or related to [Plaintiff's] . . . application or selection for employment, employment, and/or termination of employment with The Day & Zimmermann Group or one of its affiliates, subsidiaries or parent companies. . .[T]his Agreement is

---

2/ In opposition to the Motion, Plaintiff submits a declaration stating that she does not recall seeing or signing the Agreement, that the onboarding Zoom meeting with HR representatives was confusing, and that she would not have signed the Agreement because she believes that her legal claims should be heard in court. (Lares Decl. ¶¶ 4, 6, 7.) Lares also states that she does not recognize her "electronic" signature because it was signed under her maiden name, Cardenas, and not Lares. (Id. ¶ 5.) However, Rosario states in her declaration that at the time Plaintiff completed her onboarding paperwork, she was onboarded under her maiden name, Acacia Cardenas. Following onboarding, Plaintiff's legal name was updated in the system to reflect her married name, Lares. (Rosario Decl. ¶ 20.)

> intended to apply to the resolution of disputes relating to . . .compensation, minimum wage, expense reimbursement, overtime, breaks and rest periods . . . .
>
> The Arbitrator. . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or waiver of this Agreement including, but not limited to, any claim that all or any part of this Agreement is void or voidable..
>
> **5. Class and Collective Action Waivers.** The Company and you agree to bring any claim on an individual basis and not on a class and/or collective action basis. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action and the Arbitrator will have no authority to hear or preside over any such claim.
>
> YOU AGREE TO USE AN ELECTRONIC SIGNATURE TO DEMONSTRATE YOUR ACCEPTANCE OF THIS AGREEMENT. YOU FURTHER UNDERSTAND THAT AN ELECTRONIC SIGNATURE IS AS LEGALLY BINDING AS AN INK SIGNATURE. . . BY PROVIDING YOUR ELECTRONIC SIGNATURE, YOU ARE ACKNOWLEDGING YOU HAVE READ, REVIEWED, AND AGREE TO THIS AGREEMENT TO ARBITRATE.

(Rosario Decl., Exh. A.)

## II. Legal Standard

"The FAA provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable,' and permits a party 'aggrieved by the alleged . . . refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting 9 U.S.C. § 4). The FAA reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S. Ct. 1740, 1745 (2011) (quotations and citations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." Id. (citation omitted). The FAA "leaves no place for the exercise of discretion by a

district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241 (1985). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." Chiron Corp., 207 F.3d at 1130 (internal citations omitted).

## III. Discussion

In their Motion, Defendants argue that the FAA governs the Agreement and requires Plaintiff to arbitrate her individual claims, that all threshold questions of arbitrability have been delegated to the arbitrator under the terms of the Agreement, and that Plaintiff's class claims must be dismissed under the Agreement's class action waiver provision. In opposition, Plaintiff argues that she cannot be compelled to arbitrate her claims because Defendants have failed to offer sufficient evidence to show that Plaintiff signed the Agreement. Plaintiff also contends that the Agreement is not valid because it is both procedurally and substantively unconscionable.

The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." Norcia v. Samsung Telecomms. Am., LLC, 845 F.3d 1279, 1283 (9th Cir. 2017) (citation omitted). "In analyzing these arguments, [courts] 'apply ordinary state-law principles that govern the formation of contracts" to decide whether an agreement to arbitrate exists.'" Id. (citation omitted). "Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation omitted). However, the FAA allows "parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions . . . ." Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 65, 139 S. Ct. 524, 527 (2019) (citations omitted). Any such agreement "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70, 130 S. Ct. 2772, 2777–78 (2010).

When an arbitration agreement contains a provision delegating to the arbitrator the power to resolve arbitrability questions, the Court's inquiry is limited to asking whether the parties validly consented to the delegation provision. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S. Ct. 1920, 1923 (1995) ("[T]he question 'who has the primary power to decide

arbitrability' turns upon what the parties agreed about that matter."). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "'clear and unmistakable' evidence that they did so." Id. (citation modified). "Clear and unmistakable evidence" can include "a course of conduct demonstrating assent" or an "express agreement." Mohamed v. Uber Techs., Inc., 848 F.3d 1201, 1208 (9th Cir. 2016) (internal quotations omitted); see Rent-A-Center, 561 U.S. at 68; Momot v. Mastro, 652 F.3d 982, 988 (9th Cir. 2011). If the party opposing arbitration does not specifically challenge the delegation provision, the Court must treat the provision as valid, order arbitration and leave "any challenge to the validity of the Agreement as a whole for the arbitrator." Rent-A-Center, 561 U.S. at 72.

However, where, as here, the non-moving party challenges the very existence of an agreement to arbitrate, the Court must determine whether an agreement exists. Ahlstrom v. DHI Mortg. Co., Ltd., L.P., 21 F.4th 631, 635 (9th Cir. 2021) (holding that parties cannot delegate issues of formation to the arbitrator). Plaintiff argues that Defendants fail to establish the existence of an agreement to arbitrate because Rosario's declaration is insufficient. Specifically, Plaintiff claims that because there is no indication that Plaintiff ever interacted with Ms. Rosario, Defendants fail to establish by a preponderance of the evidence that Plaintiff received, reviewed, and executed the Agreement.[3/] Defendants argue that all questions of arbitrability, including formation of the Agreement, have been delegated to the arbitrator, and that their proffered evidence establishes that Plaintiff personally signed the Agreement.

The Court finds Plaintiff's evidence and arguments unpersuasive. Rosario's experience establishes her personal knowledge of the ConneX system and Plaintiff's personnel records described in her declaration. Based on that knowledge, Defendants have offered sufficient facts and explanation to meet their burden. Rosario's declaration describes the onboarding process in place at the time Plaintiff worked at Yoh, including the use of a personal email address to create a unique password, and to then access the system to sign the Agreement. The system is set up so that an employee cannot complete the onboarding process without reviewing and signing the Agreement. Moreover, Rosario reviewed Plaintiff's electronic personnel file containing her onboarding records and electronically signed documents, and states that Plaintiff created an account with ConneX using her personal email address and electronically signed the Agreement on December 3, 2024. Defendants also provide a copy of the Agreement that Plaintiff signed, including her name and email address in the signature line.

---

[3/] To the extent that Plaintiff's challenge to the Rosario Declaration is evidentiary, that objection is overruled for the same reasons as the Court concludes Defendants have satisfied their evidentiary burden.

While Plaintiff argues that Defendants fail to meet their burden, Plaintiff asserts only that she does not recall seeing or signing the Agreement. And although she also claims that she does not recognize her electronic signature, she does not directly dispute any part of Defendants' description or proffered evidence concerning the onboarding process. Nor does she disclaim the personal email address that was used to access ConneX, create a profile, and sign the Agreement. The Court thus concludes that Defendants have shown by a preponderance of the evidence that an arbitration agreement exists between Plaintiff and Defendants.

Plaintiff next challenges the validity of the agreement on procedural and substantive unconscionability grounds. That challenge to the validity of the agreement to arbitrate falls within the Agreement's delegation clause, which reserves for the arbitrator the "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or waiver of this Agreement including, but not limited to, any claim that all or any part of this Agreement is void or voidable." The Supreme Court has concluded that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, 561 U.S. at 68-69. "Who gets to decide the arbitration agreement's validity–an arbitrator or a court–depends on whether there is 'clear and unmistakable evidence that the parties agreed to delegate the validity question to the arbitrator.'" Sandler v. Modernizing Med., Inc., 170 F.4th 1209, 1212 (9th Cir. 2026) (quoting Rent-A-Center, 561 U.S. at 69 n.1). "If there is such evidence, then the arbitrator has the power to resolve that question of 'arbitrability.'" Id. There is no dispute that the language used in the Agreement here satisfies this standard. The Court thus concludes that the Agreement's delegation provision clearly and unmistakably delegates issues related to arbitrability to the arbitrator.

Plaintiff does not specifically challenge the delegation clause itself as procedurally or substantively unconscionable; her argument is that the Agreement is invalid as a whole based on alleged procedural and substantive unconscionability of certain provisions. As such, the Agreement must be enforced, and Plaintiff's unconscionability challenge must be left for the arbitrator. See Rent-A-Center, 561 U.S. at 72 ("Section 2 [of the FAA] operates on the specific 'written provision' to 'settle by arbitration a controversy' that the party seeks to enforce. Accordingly, unless [the party opposing arbitration] challenge[s] the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."). Accordingly, the Court grants the Motion to Compel Plaintiff's individual claims to arbitration. Plaintiff is free to challenge the unconscionability of the Agreement in proceedings before the arbitrator.

### A. Class Action Waiver

Defendants argue that Plaintiff's claims on behalf of all California non-exempt employees must be dismissed based on the class action waiver in the Agreement. Plaintiff does not challenge the enforceability of this waiver, and thus there is no dispute that this class action waiver is valid and enforceable. See Epic Sys. Corp. v. Lewis, 584 U.S. 497, 502, 138 S. Ct. 1612, 1619 (2018) (explaining that federal courts must "enforce arbitration agreements according to their terms—including terms providing for individualized proceedings"); Concepcion, 563 U.S. at 351; see also Dorman v. Charles Schwab Corp., 780 F. App'x 510, 514 (9th Cir. 2019) ("Because 'arbitration is a matter of contract,' [the arbitration] [p]rovision's waiver of class-wide and collective arbitration must be enforced according to its terms, and the arbitration must be conducted on an individualized basis.").

The Court therefore concludes that Plaintiff waived the right to pursue her arbitrable claims on a classwide basis, and dismisses each of Plaintiff's class claims. See, e.g., Muhammad v. Battle-Tested Strategies, LLC, CV 21-7225 VAP (JPRx), 2021 WL 6298348, at *6 (C.D. Cal. Dec. 2, 2021) (granting motion to compel arbitration and dismissing class claims where arbitration agreement contained class action waiver); Thompson v. La Petite Acad., Inc., CV 22-4348 AB (JPRx), 2023 WL 4317193, at *4 (C.D. Cal. Apr. 28, 2023) (same).

### B. Request for Stay

Defendants request that this action be stayed pending the arbitration of Plaintiff's individual claims. Plaintiff does not oppose Defendants' stay request. Under the FAA, a court, "upon being satisfied that the issue involved . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; see also Smith v. Spizzirri, 601 U.S. 472, 478, 144 S. Ct. 1173, 1178 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

The Court therefore concludes that a stay is warranted.

## Conclusion

For all of the foregoing reasons, the Court grants Defendants' Motion to Compel Arbitration. Plaintiff's class claims are dismissed, and Plaintiff's individual claims are compelled to arbitration. The Court orders this action stayed pending the completion of

**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 26-8570 PA (AYPx) | Date | September 23, 2026 |
| Title | Acacia Joi Lares v. Yoh Services LLC, et al. | | |

arbitration proceedings. This action is administratively closed and removed from the Court's active calendar until further application by the parties or order of this Court.

The parties shall file a Joint Status Report within fourteen (14) days of the completion of arbitration. If the arbitration is not completed by March 31, 2027, the parties shall file a Joint Status Report beginning on that date and continuing every four months until the arbitration is resolved. Failure to file a required Joint Status Report may, without further warning, result in dismissal of this action without prejudice.

The Scheduling Conference currently set for November 2, 2026, is vacated as moot and taken off calendar.

IT IS SO ORDERED.